# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT ASHLAND

**CIVIL ACTION NO. 15-62-DLB-EBA**

**JAMES YATES, et al.**                                                    **PLAINTIFFS**


**vs.**                      <u>**MEMORANDUM OPINION AND ORDER**</u>


**KIM DAVIS, individually and**
**in her official capacity, et al.**                              **DEFENDANTS**

* *   * *   * *   * *   * *   * *   * *   * *

This matter is before the Court on Defendant Kim Davis's Motion to Dismiss Plaintiffs James Yates and Will Smith's Complaint. (Doc. # 29). Plaintiffs having filed their Response (Doc. # 31), and Defendant having filed her Reply (Doc. # 37), the Motion is fully briefed and ripe for review. For the reasons stated herein, Defendant's Motion to Dismiss will be **granted in part** and **denied in part**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Since August of 2015, three cases against Defendant Kim Davis have been pending on this Court's docket: (1) *Miller, et al. v. Davis, et al*, 0:15-cv-44-DLB-EBA; (2) *Ermold, et al. v. Davis, et al.*, 0:15-cv-46-DLB-EBA; and (3) *Yates, et al. v. Davis, et al.*, 0:15-cv-62-DLB-EBA.[1] Each of these cases arose from the same circumstances—Kim Davis's refusal to issue marriage licenses to legally eligible couples. Factually, however,

---

[1]     The *Miller* Plaintiffs filed their suit against Kim Davis first, on July 2, 2015. Seven days later, on July 10, 2015, the *Ermold* Plaintiffs brought another action against Davis. And by August 25, 2015, the *Yates* Plaintiffs had filed a third suit against Davis.

the cases differ in significant ways. The first of these—the *Miller* case—is not like the others; the last two—the *Ermold* and *Yates* cases—are nearly identical.[2]

In *Miller*, the Plaintiffs sought prospective injunctive relief, which this Court granted. Specifically, the Court enjoined Davis from enforcing her "no marriage licenses" policy. *Miller*, 0:15-cv-44-DLB-EBA (Docs. # 43 and 74 therein). Thereafter, the Court held that the *Miller* Plaintiffs "prevailed" against Davis, in her official capacity, when they obtained a preliminary injunction forcing her to issue marriage licenses. *Id.* (Doc. # 206 therein). Accordingly, the Court recently awarded the *Miller* Plaintiffs attorneys' fees and costs under 42 U.S.C. § 1988 and ordered the Commonwealth of Kentucky, which Davis represented in her official capacity, to foot the bill.[3] *Id.*

In contrast to the *Miller* Plaintiffs, the *Ermold* and *Yates* Plaintiffs do not pursue prospective injunctive relief. Instead, they seek retrospective money damages. And in suits against government officials, the type of relief requested makes all the difference. Therefore, this case, and the companion case, *Ermold, et al. v. Davis, et al.*, will chart their own course.

On June 26, 2015, the United States Supreme Court held that the fundamental right to marry extended to same-sex couples, and therefore, states are constitutionally required to recognize same-sex marriage. *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). At that time, Plaintiffs James Yates and Will Smith had been in a committed same-sex

---

[2]     This matter involves an additional defendant, Rowan County. (Doc. # 1).

[3]     As this Court explained in the July 21, 2017 Memorandum Opinion and Order in *Miller*, although attorneys' fees and costs may bear resemblance to monetary relief, they are not money damages. *Miller*, 0:15-cv-44-DLB-EBA (Doc. # 206 therein). "Unlike ordinary 'retroactive' relief, such as damages or restitution, an award of costs does not compensate the plaintiff for the injury that first brought him into court." *Hutto v. Finney*, 437 U.S. 678, 695 n.24 (1978). "Instead, the award reimburses him for a portion of the expenses he incurred in seeking prospective relief." *Id.*

relationship for nine years.  (Doc. # 1 at ¶ 8).  Ten days later—on July 6, 2015—Plaintiffs went to the Rowan County Clerk's Office and requested a marriage license.  (Doc. # 1 at ¶ 13).  The couple's request was denied and they were informed of Rowan County Clerk Kim Davis's "no marriage licenses" policy.  *Id.*

On August 12, 2015, this Court granted the *Miller* Plaintiffs' Motion for Preliminary Injunction and enjoined Davis from enforcing her "no marriage licenses" policy to future marriage-license requests by those Plaintiffs.  *Miller*, 0:15-cv-44-DLB-EBA (Doc. # 43 therein).  The next day—August 13, 2015—Plaintiffs Yates and Smith's marriage-license request was again denied.  (Doc. # 1 at ¶ 18).  On August 25, 2015, the Plaintiffs filed the instant action.  (Doc. # 1).

Davis unsuccessfully appealed the Court's preliminary-injunction ruling to the United States Court of Appeals for the Sixth Circuit and to the United States Supreme Court.  *Miller v. Davis*, No. 15-5880, 2015 WL 10692640 (6th Cir. Aug. 26, 2015); *Davis v. Miller*, 136 S. Ct. 23 (2015).  Despite this Court's directive and her failed appeals, Davis refused to comply with the Court's Order.  *Miller*, 0:15-cv-44-DLB-EBA (Doc. # 67 therein).

On September 3, 2015, the Court found Davis in contempt of the Court's Order and remanded her to the custody of the United States Marshal, pending compliance.  *Id.* (Doc. # 75 therein).  That same day, the Court modified the preliminary injunction and clarified that Davis, in her official capacity as Rowan County Clerk, was "preliminarily enjoined from applying her 'no marriage licenses' policy to future marriage license requests … by [any] individuals who [were] legally eligible to marry in Kentucky."  *Id.* (Doc. # 74 therein).

While multiple appeals from the *Miller* case were pending before the Sixth Circuit, the briefing in this matter was stayed. (Doc. # 11). Before the Sixth Circuit resolved the *Miller* appeals, the parties in that matter agreed that a legislative change had rendered the consolidated appeals moot, and the Sixth Circuit dismissed those appeals. *Miller*, 0:15-cv-44-DLB-EBA (Doc. # 179 therein). In its July 13, 2016 Order, the Sixth Circuit remanded the *Miller* matter to this Court, "with instructions to vacate" the August 12, 2015 and September 3, 2015 Preliminary Injunction Orders. *Id.* After the mandate issued, this Court complied with the Sixth Circuit's instructions and vacated the Preliminary Injunction Orders, denied all pending motions as moot, and dismissed the *Miller* matter from the Court's active docket. *Id.* (Docs. # 180 and 181 therein). In that same Order, the Court lifted the stay in this case and dismissed this matter from the Court's active docket.[4] (Doc. # 16).

Plaintiffs filed a Motion for Reconsideration of the Order dismissing this matter. (Doc. # 17). In response to that same Order, the *Ermold* Plaintiffs appealed to the Sixth Circuit. *Ermold*, 0:15-cv-46-DLB-EBA (Doc. # 20 therein). On May 2, 2017, the Sixth Circuit reversed the Order dismissing the *Ermold* Plaintiffs' case, and remanded the action for further proceedings. *Ermold*, 0:15-cv-46-DLB-EBA (Docs. # 21 and 22 therein). Specifically, the Sixth Circuit held that the *Ermold* Plaintiffs' money-damages claim was not moot because they sought money damages, not an injunction. *Id.* For the same reason, this Court granted Plaintiffs' Motion for Reconsideration and set a telephonic conference to discuss a briefing schedule. (Docs. # 24 and 25). Now, the Defendant has moved to dismiss all of Plaintiffs' claims against her, arguing that she is immune from

---

[4]    The stay in the *Ermold* matter was also lifted, and that case was also dismissed from the Court's active docket. (Doc. # 16).

Plaintiffs' damages claims.  (Doc. # 29).

## II.     ANALYSIS

### A.     Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Put another way, "the plaintiff must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level."  *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015) (quoting *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although "Plaintiffs need not meet a 'probability requirement' … they must show 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Id.* at 427-28 (quoting *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011)).  "In ruling on the issue, a district court must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'"  *Id.* at 428 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  After all, the "defendant has the burden of showing that the plaintiff has failed to state a claim for relief."  *Id.*

### B.     Immunities

To state a claim under 42 U.S.C. § 1983, Plaintiffs must allege that a person acting under color of state law deprived them of a right secured by the Constitution or federal law.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).  When a plaintiff seeks to hold governmental officials liable under § 1983, the Court must first consider

immunities, which erect legal hurdles for claims against government entities and their officials. Three variables dictate whether immunity bars these Plaintiffs' suit: (1) the type of government entity the official represents, (2) the nature of the relief requested, and (3) the capacity in which the government official is sued.

First, Davis is a state official. As mentioned above, and discussed in detail in the July 21, 2017 Memorandum Opinion and Order in *Miller*, Davis was acting as an agent of the Commonwealth of Kentucky when she refused to issue marriage licenses to legally eligible couples.[5] Second, Plaintiffs are seeking to vindicate their constitutional rights by obtaining money damages. And third, Plaintiffs have sued Davis in both her official capacity and her personal capacity. "Personal-capacity suits seek to impose personal liability upon a government official for actions … take[n] under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974)). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Because different immunities apply to Plaintiffs' official-capacity and personal-capacity claims, the Court will address each in turn.

---

[5] The Plaintiffs note their disagreement with the Court's prior conclusion that Davis represented the Commonwealth when she refused to issue marriage licenses, and incorporate the *Ermold* Plaintiffs' argument with respect to that issue. (Doc. # 31 at 7). The Court declines to reconsider its prior ruling. A consideration of the relevant factors compelled the Court to conclude that county clerks, when issuing—or refusing to issue—marriage licenses, represent the Commonwealth of Kentucky, not their respective counties.

Therefore, as the Court held in *Miller*, "[t]his conclusion insulates Rowan County from liability" for Plaintiffs' money-damages claim. *Miller*, 0:15-cv-44-DLB-EBA (Doc. # 206 therein). As Plaintiffs acknowledge, such a finding renders their money-damages claim against Davis in her official capacity "untenable." (Doc. # 31 at 7). For the same reasons, it also renders Plaintiffs' claims against Rowan County untenable. Accordingly, Plaintiffs' claims against Rowan County must be dismissed.

### 1. Plaintiffs' official-capacity claim against Davis must be dismissed.

Plaintiffs' official-capacity claim against Davis faces an insurmountable hurdle—sovereign immunity. The Eleventh Amendment's "[s]overeign immunity protects states, as well as state officials sued in their official capacity for money damages, from suit in federal court." *Boler v. Earley*, 865 F.3d 391, 409-10 (6th Cir. 2017) (citing *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)). Therefore, Plaintiffs' money-damages claim against Davis in her official capacity, which "is, in all respects other than name, to be treated as a suit against the" Commonwealth, is barred by the Eleventh Amendment.[6] *Graham*, 473 U.S. at 166. Accordingly, to the extent Plaintiffs seek money damages from Davis in her official capacity, she is immune from such relief, and that claim must be dismissed for failure to state a claim upon which relief can be granted. *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011).

### 2. Plaintiffs' personal-capacity claim against Davis will not be dismissed.

Qualified immunity—although an obstacle to Plaintiffs' personal-capacity claim against Davis—can be overcome. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important

---

[6] Furthermore, "neither a State nor its officials acting in their official capacities are 'persons'" within the meaning of § 1983. *Will*, 491 U.S. at 71. Thus, Plaintiffs' claims against Davis, in her official capacity as a state official, are not cognizable.

interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

"Qualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violated the law.'" *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam)). And "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231.

There is a "two-tiered inquiry" for resolving claims of qualified immunity. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012)). First, the Court must determine whether "the facts alleged make out a violation of a constitutional right."[7] *Id.* If the plaintiff has shown a violation of a constitutional right, then the Court must proceed to the second step and "ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated" the right. *Id.*

To survive a motion to dismiss on qualified-immunity grounds, both inquiries must be resolved in Plaintiffs' favor. *See Wesley*, 779 F.3d at 489. Plaintiffs bear "the burden of showing that" Davis is "not entitled to qualified immunity." *Johnson*, 790 F.3d at 653; *see also Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). "At the pleading stage, this burden is carried by alleging facts plausibly making out a claim that

---

[7] The Court recognizes that the sequential procedure mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) is no longer required. *See Pearson*, 555 U.S. at 227. However, as the *Pearson* Court noted, that sequence is "often appropriate" and "beneficial," and that is especially true in this case.

the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Id.* (citing *Wesley*, 779 F.3d at 428).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Accordingly, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (citing *Hunter*, 502 U.S. at 227). The Sixth Circuit, however, has clarified that only truly "insubstantial claims against government officials should be resolved … prior to broad discovery," *Johnson*, 790 F.3d at 653, and has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley*, 779 F.3d at 433. Thus, "[a]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id.* at 433-34 (internal citations and quotation marks omitted).

### a. The facts alleged plausibly make out a violation of a constitutional right.

"It is undisputed that the right to marry is protected by … the Fourteenth Amendment."[8] *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (citing *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978)). "The freedom to marry has long been recognized as one of

---

[8] The right to marry is also an "associational right" under the First Amendment. *Montgomery v. Carr*, 101 F.3d 1117, 1124 (6th Cir. 1996). Because "Supreme Court precedent … establishes that the same level of scrutiny applies in both the First Amendment and [Fourteenth Amendment] substantive due process contexts," the "level of scrutiny to be applied to state action impinging on the right to marry is invariant with respect to the precise constitutional provision undergirding that right." *Id.* Therefore, there is no reason for the Court to separately consider Plaintiffs' claims under the First Amendment.

the vital personal rights essential to the orderly pursuit of happiness by free men." *Loving v. Virginia*, 388 U.S. 1, 12 (1967); *see also Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942).  It is also undisputed that as of June 26, 2015, the fundamental right to marry extended to same-sex couples.  *Obergefell*, 135 S. Ct. at 2607-08 ("The Court, in this decision, holds same-sex couples may exercise the fundamental right to marry in all States.").

When governmental action interferes with the exercise of a fundamental right, like the right to marry, the Court must "decide at what 'level of scrutiny' to evaluate the challenged" policy.  *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001).  To determine the appropriate level of scrutiny, the Court must first consider "whether the policy or action is a direct or substantial interference with the right of marriage."  *Montgomery v. Carr*, 101 F.3d 1117, 1124 (6th Cir. 1996).  Governmental action places a "direct and substantial burden" on the right to marry "where a large portion of those affected by the rule are absolutely or largely prevented from marrying, or where those affected by the rule are absolutely or largely prevented from marrying a large portion of the otherwise eligible population of spouses."  *Vaughn*, 269 F.3d at 710 (citing *Montgomery*, 101 F.3d at 1124-25; *Zablocki*, 434 U.S. at 387).

If the policy or action places a "direct and substantial burden" on the right to marry, courts apply strict scrutiny.  *Montgomery*, 101 F.3d at 1124.  Under strict scrutiny, the policy or action "cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests."  *Zablocki*, 434 U.S. at 388.

However, "not every state action, 'which relates in any way to the incidents of or the prerequisites for marriage must be subjected to rigorous scrutiny.'" *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1134 (6th Cir. 1995) (quoting *Zablocki*, 434 U.S. at 386). States may impose "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship." *Id.* at 1135. If the policy does not "directly and substantially interfere with the fundamental right to marry," courts will subject the governmental action to a more lenient test—rational basis. *Vaughn*, 269 F.3d at 710. Rational-basis review requires only that the challenged policy is "rationally related to legitimate government interests." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

In their briefing, the parties suggest different standards of scrutiny. The Defendant argues that the Court should apply rational-basis review to her "no marriage licenses" policy because "Plaintiffs were neither absolutely nor largely prevented from marrying whom they wanted under Kentucky law." (Doc. # 29-1 at 32). Instead, the Defendant contends that the Plaintiffs experienced a "mere inconvenience" at the Rowan County Clerk's Office, and could have requested a marriage license from a neighboring county. *Id.* Plaintiffs, however, claim that Defendant's "no marriage licenses" policy should be subjected to strict scrutiny because it "impose[d] a direct and substantial burden on Plaintiffs' right to marry." (Doc. # 31 at 9).

As the Sixth Circuit has stated, "[c]ase law illustrates what the Supreme Court means by 'direct and substantial.'" *Montgomery*, 101 F.3d at 1124. In *Loving*, the Supreme Court determined that "the anti-miscegenation statute at issue was a 'direct and substantial' burden on the right of marriage because it absolutely prohibited individuals of

different races from marrying." *Id.* (citing *Loving*, 388 U.S. 1). In *Zablocki*, the Court found that "the burden on marriage was 'direct and substantial' because the Wisconsin statute in that case required non-custodial parents, who were obliged to support their minor children, to obtain court permission if they wanted to marry." *Id.* (citing *Zablocki*, 434 U.S. 374). Specifically, the *Zablocki* Court reasoned:

> Some of those in the affected class … will never be able to obtain the necessary court order, because they either lack the financial means to meet their support obligations or cannot prove that their children will not become public charges. These persons are absolutely prevented from getting married. Many others, able in theory to satisfy the statute's requirements, will be sufficiently burdened by having to do so that they will in effect be coerced into forgoing their right to marry. And even those who can be persuaded to meet the statute's requirements suffer a serious intrusion into their freedom of choice in an area in which [the Court has] held such freedom to be fundamental.

*Zablocki*, 434 U.S. at 387.

By contrast, in cases where there is "no direct legal obstacle in the path of persons desiring to get married, and … no evidence that the laws significantly discouraged, let alone made 'practically impossible,' any marriages," the Supreme Court has found that the governmental action was not a "direct and substantial" infringement on the right to marry. *Id.* at 387 n.12 (citing *Califano v. Jobst*, 434 U.S. 47 (1977) (upholding a Social Security Act provision that terminated benefits for a disabled dependent child when that child married someone who was ineligible for benefits)). Therefore, if the governmental policy or action "merely plac[es] a non-oppresive burden on the decision to marry, or on those who are already married," such a burden is "not sufficient to trigger heightened constitutional scrutiny." *Montgomery*, 101 F.3d at 1125 (applying rational-basis review to public school's anti-nepotism policy, which "impose[d] some costs and burdens on marriage," but were "not 'direct' in the sense that they place[d] an absolute barrier in the

path of those who wish to marry."); *see also Wright*, 58 F.3d at 1135-36 (also applying rational-basis review to nepotism policy requiring transfer, which "does not create a legal obstacle that would prevent a class of people from marrying."); *Vaughn*, 269 F.3d at 712 (holding nepotism policy requiring termination "did not bar [plaintiffs] from getting married, nor did it prevent them marrying a large portion of population even in Lawrence County," rather the policy "only made it economically burdensome to marry a small number of those eligible individuals.").

This Court previously determined that Defendant's "no marriage licenses" policy placed a "direct and substantial burden" on the right to marry and thus, was subjected to strict scrutiny. *Miller*, 0:15-cv-44-DLB-EBA (Doc. # 43 therein). Nothing in the record has altered the preliminary decision the Court reached in *Miller*.

The state action at issue in this case is Defendant's refusal to issue *any* marriage licenses. That policy constituted a "direct and substantial interference" with the Plaintiffs' right of marriage because it was a "direct legal obstacle in the path of [all Rowan County residents] desiring to get married." *Zablocki*, 434 U.S. at 387. Defendant's "no marriage licenses" policy differs significantly from the anti-nepotism policies, which simply deter "some persons who might otherwise have married" or economically burden "some who [do] marry." *Montgomery*, 101 F.3d at 1126.

The Court recognizes that the Plaintiffs might have been able to travel to a neighboring county and request a marriage license, as Defendant suggests.[9] (Doc. # 29-1 at 28-29). But that is beside the point. The plaintiffs in *Zablocki* also had a potential

---

[9]     The Court does, however, note that Rowan County is situated in a rural portion of eastern Kentucky. And the counties surrounding Rowan County—Fleming, Lewis, Carter, Elliott, Morgan, Menifee, and Bath—have County Clerk's Offices that range from approximately 20 to 40 miles away from the Rowan County Clerk's Office.

"end run" around the challenged statute in that case—they could have complied with the law and obtained the required court order—but the Supreme Court still found that the statute "directly and substantially" interfered with the plaintiffs' fundamental right to marry. *Zablocki*, 434 U.S. at 387.

Like the plaintiffs in *Zablocki*, some Rowan County residents would "never be able to" receive a marriage license, "because they either lack[ed] the financial [or practical] means" to travel to a neighboring county. *Id.* "These persons [were] absolutely prevented from getting married." *Id.* "Many others, able in theory to" travel to a neighboring county to obtain their marriage license, would have been "sufficiently burdened by having to do so," such that they were "in effect … coerced into forgoing their right to marry." *Id.* "And even those who [could have been] persuaded" to travel to a neighboring county to obtain their marriage license, "suffer[ed] a serious intrusion into their freedom of choice in an area in which" the Supreme Court has held "such freedom to be fundamental." *Id.*

Therefore, the Defendant's "no marriage licenses" policy placed a "direct and substantial burden" on the right to marry, and must be subjected to strict scrutiny. *Montgomery*, 101 F.3d at 1124. Accordingly, the "no marriage licenses" policy "cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." *Zablocki*, 434 U.S. at 388.

As this Court previously held, Defendant's "no marriage licenses" policy fails to satisfy strict scrutiny.[10] *Miller*, 0:15-cv-44-DLB-EBA (Doc. # 43 therein). The Court acknowledges that the Commonwealth, "certainly has an obligation to 'observe the basic

---

[10] In fact, the Defendant's "no marriage licenses" policy would fail to survive even rational-basis review because it is an "unreasonable means of advancing" any "legitimate governmental interest" that might exist. *Vaughn*, 269 F.3d at 712.

free exercise rights'" of state officials and employees.[11]  *Id.*  However, the compelling nature of that interest is diminished by the Commonwealth's countervailing interests in "preventing Establishment Clause violations" and "upholding the rule of law."  *Id.*  Thus, the Defendant's "no marriage licenses" policy was not supported by a sufficiently important state interest.  Moreover, even if the "no marriage licenses" policy were supported by a sufficiently important state interest, the policy was certainly not "closely tailored" to effectuate only those interests.  The Defendant's "no marriage licenses" policy was not tailored in any meaningful way; it prevented all Rowan County residents from obtaining a marriage license in their home-county.  Therefore, viewing the facts alleged in the light most favorable to the Plaintiffs, they have plausibly made out a violation of a constitutional right.  *Martin*, 712 F.3d at 957.

> **b.** **The constitutional right at issue was clearly established.**

Having concluded that Defendant's alleged conduct violated Plaintiffs' constitutional rights, the Court now turns to whether the right at issue was clearly established.

A constitutional right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what [she] is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "'[B]inding precedent from the Supreme Court, the Sixth Circuit, or the district court itself' can provide such clarity; persuasive authority from 'other circuits that is directly on point' may also

---

[11]     The Defendant's briefing stops at challenging the application of strict scrutiny.  She does not attempt to argue that strict scrutiny is satisfied, nor does she articulate a specific state interest or argue that her "no marriage licenses" policy was closely tailored to effectuate only those interests.  Out of an abundance of caution, however, the Court will consider the state interest the Defendant proffered in *Miller*—the Commonwealth's interest in protecting her religious freedom.  *Miller*, 0:15-cv-44-DLB-EBA (Doc. # 43 therein).

demonstrate that a law is clearly established." *Occupy Nashville v. Haslam*, 769 F.3d 434, 443 (6th Cir. 2014) (quoting *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010). "This is not to say that an official['s] action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. Nor must there be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Put simply, the "salient question" is "whether the state of the law" on July 6, 2015—the day Plaintiffs first requested a marriage license from the Rowan County Clerk's Office—gave Defendant "fair warning that [her] alleged treatment of [Plaintiffs] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "Plaintiffs have the burden of showing that a right is clearly established." *Toms*, 338 F.3d at 525 (citing *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995)).

Plaintiffs rely on the Supreme Court's holding in *Obergefell*, which extended the fundamental right to marry to same-sex couples, as proof that their rights were clearly established when the Defendant adopted her "no marriage licenses" policy. (Doc. # 31 at 10-11). The Defendant claims that Plaintiffs' rights were not clearly established, despite *Obergefell*, for several reasons. (Doc. # 37 at 7-15). Each of the Defendant's arguments, which will be addressed in turn, fail.

First, the Defendant suggests that "recently enacted or modified law cannot be clearly established." *Id.* at 8-9. This argument is not supported by the law. The Defendant cites *Harlow v. Fitzgerald* for the following proposition: "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate

subsequent legal developments, nor could he fairly be said to know that the law forbade conduct not previously identified as unlawful." *Id.* (quoting *Harlow*, 457 U.S. at 818). But that principle has no relevance in this particular case. On June 26, 2015, the Supreme Court held that States were prohibited from denying the fundamental right to marry to same-sex couples. *See Obergefell*, 135 S. Ct. 2584. After *Obergefell*, the "unlawfulness" of the Defendant's refusal to issue marriage licenses to legally eligible couples, including same-sex couples, was "apparent."[12] *Hope*, 536 U.S. at 739. Thus, Davis needed not anticipate subsequent legal developments, but merely comply with those legal developments.

Furthermore, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Sutton v. Metro. Gov't of Nashville*, 700 F.3d 865, 876 (6th Cir. 2012). "Some violations of constitutional rights are so obvious that a 'materially similar case' is not required for the right to be clearly established." *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013) (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). "When a general constitutional principle is not tied to particularized facts, the principle can clearly establish law applicable in the future to different sets of detailed facts." *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir. 2005) (internal citations and quotation marks omitted). The refusal to issue marriage licenses to same-sex couples after June 26, 2015 is such a situation. Even if considered a "novel factual circumstance," the Plaintiffs' fundamental right to marry was so "obvious" after *Obergefell* that the Defendant had fair notice that adopting her "no marriage licenses" policy was

---

[12]     Although outside the pleadings in this case, the Court notes that the Defendant's own testimony has established that she adopted her "no marriage licenses" policy *in response* to the Supreme Court's decision in *Obergefell*.  *Miller*, 0:15-cv-44-DLB-EBA (Doc. # 26 at 33:13-36:4; 68:16-23 therein).

unconstitutional.

In support of her qualified-immunity claim, the Defendant also argues that the "Plaintiffs' description of their alleged right is too generalized to satisfy the clearly established requirement." (Doc. # 37 at 9-11). Specifically, the Defendant claims that the "relevant constitutional question" is not whether it was clearly established that "the Commonwealth of Kentucky [was] required to license and recognize [same-sex marriage]." (Doc. # 29-1 at 23). Rather, Defendant suggests that "the particular inquiry … is whether *Obergefell* requires Kentucky to compel each and every county clerk to authorize and approve [same-sex marriage] licenses without any accommodation for their sincerely[ ]held religious beliefs." *Id.* Because that issue "has not been specifically litigated in Kentucky courts, let alone decided by the Sixth Circuit or the Supreme Court," the Defendant claims that the law cannot be "clearly established." *Id.*

"The operation of" qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson*, 483 U.S. at 639. Therefore, the Supreme Court has "repeatedly told courts … not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). If the right is defined too broadly, it "bear[s] no relationship to the 'objective legal reasonableness' that is the touchstone" of the qualified-immunity inquiry, and "Plaintiffs would be able to convert the rule of qualified immunity … into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson*, 483 U.S. at 639.

However, the inverse is also true. A constitutional right can be defined with such detail and particularity that each new case would further define and explain the right, converting qualified immunity into absolute immunity. In this case, the correct articulation of the Plaintiffs' claimed right can be easily derived from *Obergefell*:

> [T]he right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, couples of the same-sex may not be deprived of that right and that liberty. The Court now holds that same-sex couples may exercise the fundamental right to marry. No longer may this liberty be denied to them.

*Obergefell*, 135 S. Ct. at 2605-06. The right of same-sex couples to exercise the fundamental right to marry is not an extremely abstract right, like "the right to due process of law." *Anderson*, 483 U.S. at 639. Instead, it is sufficiently particularized. *Id*. Therefore, Plaintiffs' alleged right is not "too generalized to satisfy the clearly established requirement."

Moreover, the Defendant's improper characterization of the right that must be clearly established, and her remaining arguments, fail because her focus is misplaced. In her attempt to argue that *Obergefell* did not clearly establish Plaintiffs' rights, the Defendant claims that "*Obergefell* did not answer every question." (Doc. # 37 at 7). Specifically, the Defendant argues that *Obergefell* answered only a "narrow constitutional question"—whether the fundamental right to marry extended to same-sex couples—but left open whether she "must abandon any claim" to a religious accommodation. *Id*. at 7-8. Relatedly, the Defendant argues that the First Amendment's Establishment Clause, Free-Exercise Clause, and the Kentucky Religious Freedom Restoration Act created "reasonable uncertainty" as to her obligations and the clarity of the law. *Id*. at 11-15.

It is not necessary for *Obergefell* to answer every question. *Obergefell* answered one question—whether the fundamental right to marry extended to same-sex couples. The answer was yes, and that clearly established Plaintiffs' constitutional rights. Furthermore, the focus of both of these arguments is on the Defendant—on her rights, her obligations, and her desire for a religious accommodation. But that misses the mark. The cornerstone of the qualified-immunity inquiry is whether *Plaintiffs'* rights, not the Defendant's, are "clearly established."[13] Thus, the Defendant's hope that the First Amendment or Kentucky's Religious Freedom Restoration Act *excused* her conduct in violating Plaintiffs' clearly established rights, does not entitle her to qualified immunity.

In conclusion, the Defendant had fair warning on July 6, 2015—when she denied Plaintiffs' request for a marriage license—that her conduct was unconstitutional. *Obergefell* established on June 26, 2015, that same-sex couples, like the Plaintiffs, had the right to exercise the fundamental right to marry. *Obergefell* further explained that States could no longer deny that right to them. Therefore, the "contours of the right" were "sufficiently clear" such that "a reasonable official would understand that" adopting a "no marriage licenses" policy would violate that right. *Anderson*, 483 U.S. at 640.

The Plaintiffs have met their burden by "alleging facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that [her] conduct

---

[13] The cases that the Defendant cites fail to convince the Court otherwise. The Defendant attempts to rely on two First Amendment free-speech cases—*Guercio v. Brody*, 911 F.2d 1179 (6th Cir. 1990) and *Gossman v. Allen*, 950 F.2d 338 (6th Cir. 1991)—which are inapposite. In addition to being factually distinguishable, the "balance" that *Guercio* and *Gossman* discuss is mandated by the "familiar" First Amendment rule that requires "employees' right to free speech" to be balanced against "the countervailing interests of his employer." *Guercio*, 911 F.2d at 1183 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). There is no precedential support for applying this sort of "balancing" to Plaintiffs' fundamental right to marry.

violated that right." *Johnson*, 790 F.3d at 653 (citing *Wesley*, 779 F.3d at 428). Accordingly, the Defendant's Motion to Dismiss Plaintiffs' money-damages claim against her in her personal capacity must be denied.

## IV. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)     Defendant Kim Davis's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. # 29) is **granted in part**, as to Plaintiffs' claims against Defendant Kim Davis in her official capacity; and **denied in part**, as to Plaintiffs' claims against Kim Davis in her personal capacity;

(2)     Plaintiffs' Complaint (Doc. # 1) is **dismissed** with respect to Plaintiffs' claims against Kim Davis **in her official capacity**;

(3)     Having previously determined, and reaffirmed herein, that Defendant Kim Davis represented the Commonwealth of Kentucky when she refused to issue marriage licenses to legally eligible couples, Plaintiffs' Complaint is **dismissed** with respect to Plaintiffs' claims against Defendant Rowan County, Kentucky; and

(4)     Defendant Rowan County, Kentucky is **dismissed** as a party to this action, as all claims against it have been dismissed and adjudicated.

This 15th day of September, 2017.



Signed By:

*David L. Bunning*

United States District Judge